UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GREGORY D KONSIONOWSKI,

        Plaintiff,

  v.                                              Case No. 19-cv-0596-bhl

PHILLIP J SIKORSKI,

        Defendant.

---

## ORDER DECIDING SUMMARY JUDGMENT

---

      Plaintiff Gregory D. Konsionowski was a bit shaken up when his car was rear-ended while stopped at a traffic light in the Village of Menomonee Falls. He remained sufficiently in control of his faculties to call the police and report the accident and then agreed with the officers that an ambulance should be summoned. But Konsionowski was blindsided for the second time that day when one of the officers who arrived on the scene, Defendant Phillip J. Sikorski, required him to take a field sobriety test before being seen by EMTs, and then arrested him for claimed failures of that test, while allowing the driver of the other car, a retired police officer from a neighboring municipality, to leave the scene (she received a citation the next day). Konsionowski claims Officer Sikorski violated his Fourth and Fourteenth Amendment rights. Officer Sikorski, predictably, disputes any constitutional impropriety and asks the Court to dismiss Konsionowski's claims on summary judgment. Because the facts are disputed and could support some of Konsionowski's theories, Defendant's summary judgment motion must be denied, at least in part. A reasonable jury could find that Officer Sikorski lacked both reasonable suspicion to perform the field sobriety tests and probable cause to arrest Konsionowski and search his person and vehicle, so those claims will survive. As to all other claims—where no disputed questions of fact remain—summary judgment will be granted in Officer Sikorski's favor.

# FACTUAL BACKGROUND[1]

On May 2, 2013, at approximately 4:30 p.m., retired Whitefish Bay police officer Chris Jensen rear-ended Plaintiff Gregory D. Konsionowski at a stoplight at the intersection of Highway 145/124th Street and Leon Road in the Village of Menomonee Falls, Wisconsin. (ECF No. 27 at ¶8, ECF No. 35 at ¶22.) Konsionowski called the Menomonee Falls Police Department, which dispatched Defendant Officer Phillip J. Sikorski to the scene. (ECF No. 35 at ¶¶2-3.)

Officer Sikorski asked both drivers if they were injured. (*Id.* at ¶8.) Konsionowski replied that he was "a little out of it," "dazed," and "a little hurt in [his] neck." (*Id.*) Officer Sikorski indicated that he was concerned about whether Konsionowski was injured, so the two agreed that an ambulance should be called. (ECF No. 27 at ¶11.) Officer Sikorski then briefly spoke with Konsionowski alone and asked him to retrieve his license and proof of insurance. (ECF No. 35 at ¶10.) During this 63-second interaction, Officer Sikorski claims that he noticed Konsionowski had very glassy eyes and pinpoint pupils, slurred and deliberate speech, difficulty removing his license from his wallet, and an unsteady gait. (ECF No. 27 at ¶¶14-17.) Konsionowski disputes Officer Sikorski's account. (*Id.*)

Officer Sikorski separated Jensen and Konsionowski to take their respective statements. (*Id.* at ¶12.) He started with Jensen. (*Id.* at ¶13.) She took responsibility for the accident and told him she was a retired Whitefish Bay police officer. (ECF No. 35 at ¶¶17, 22.) He asked if she had been drinking or taking any medication. (*Id.* at ¶23.) She denied drinking and stated that while she was on medication, it would not have affected her driving. (*Id.*) At this point, Officer Sikorski radioed for backup because he intended to conduct a field sobriety test on Konsionowski. (*Id.* at ¶26.)

Officer Sikorski next returned to speak to Konsionowski. (*Id.* at ¶32.) He asked Konsionowski if he had been drinking or taking any illegal drugs, narcotics, or medications, all of which Konsionowski denied. (*Id.* at ¶¶34-35.) According to Officer Sikorski, he suspected Konsionowski was lying because of "observed indicators" of opiate use. (ECF No. 27 at ¶33.)

While Sikorski and Konsionowski were talking, Officer Dane Helland arrived on the scene in response to the request for backup. (ECF No. 35 at ¶37.) With Officer Helland present, Officer

---

[1] These facts are drawn from the parties' proposed statements of undisputed facts (and responses), (ECF Nos. 27 & 35), as well as video exhibits, (ECF No. 23 Exhs. E & N). Disputed facts are viewed in the light most favorable to Plaintiff as the non-moving party.

Sikorski conducted a series of field sobriety tests, including the horizontal and vertical nystagmus test, the walk-and-turn test, and the one-leg stand test. (ECF No. 27 at ¶¶44, 53-54, 66.) The parties dispute whether Konsionowski passed the horizontal and vertical nystagmus tests. (*Id.* at 50.) Konsionowski failed the walk-and-turn test when he twice raised his arms to help maintain balance and stopped to ask Officer Sikorski a question instead of completing the turn as instructed. (*Id.* at ¶62.) Konsionowski failed the one-leg stand test when he swayed to maintain balance and stopped counting at "ten one-thousand" instead of continuing to count until told to stop as instructed. (*Id.* at ¶71.) Officer Sikorski then used a breathalyzer to measure Konsionowski's blood alcohol content. (ECF No. 35 at ¶57.) Konsionowski blew a 0.0. (*Id.* at ¶58.)

Officer Sikorski then informed Konsionowski that he was under arrest for violating Village of Menomonee Falls Ordinance No. 106-2, adopting Wis. Stat. §346.63(1)(a), Operating While Under the Influence. (ECF No. 27 at ¶74.) Konsionowski was handcuffed and searched. (ECF No. 35 at ¶62.) He was then taken to the waiting ambulance for treatment. (*Id.* at ¶66.) EMT Joanna (Narwold) Sukup's Out of Hospital Care Report indicated that Konsionowski's pupils and speech were normal. (*Id.* at ¶¶70, 73.)

While the EMTs examined Konsionowski, Officers Sikorski and Helland searched his vehicle, including the locked portion of the truck bed. (ECF No. 27 at ¶78, ECF No. 35 at ¶67.) The search uncovered loose ammunition and multiple bottles of prescription drugs. (ECF No. 27 at ¶80.) Konsionowski's pharmacy later confirmed that he had valid prescriptions for all of the pills found in the vehicle. (*Id.* at ¶82.)

Following the EMT's initial examination, Konsionowski rejected further medical treatment, so Officer Sikorski transported him to Community Memorial Hospital for a blood draw. (*Id.* at ¶¶86, 89.) Konsionowski consented to the blood draw. (*Id.* at ¶90.) The report from the Wisconsin State Laboratory of Hygiene found that Konsionowski's blood tested negative for ethanol and positive for Alprazolam (also known as Xanax), consistent with his prescription. (ECF No. 27 at ¶92, ECF No. 35 at ¶¶79, 82.)

After the blood draw, Konsionowski was taken to the Menomonee Falls Police Department, booked on an OWI charge, and released into his neighbor's custody. (ECF No. 27 at ¶91.) Jensen received a citation the following day. (*Id.* at ¶77.)

# SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §2529, pp. 300 (2d ed. 1995)). In other words, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citing Wright & Miller 299). Generally, disputes of fact are viewed in the light most favorable to the nonmoving party, *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000), but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# ANALYSIS

In his complaint, Konsionowski makes detailed allegations about his interactions with Officer Sikorski, followed by a general contention that he was "unlawfully detained, seized, searched, and arrested" in violation of his Fourth and Fourteenth Amendment rights. (ECF No. 1 at ¶32.) In his summary judgment briefing, Konsionowski offers greater specificity on his claims, identifying five alleged constitutional violations. He contends Officer Sikorski violated his rights when he: (I) conducted a field sobriety test without reasonable suspicion; (II) carried out an arrest without probable cause; (III) improperly searched Konsionowski and his vehicle; (IV) improperly subjected Konsionowski to a breathalyzer and blood draw without probable cause; and (V) intentionally treated Konsionowski differently than Jensen with no rational basis for such disparate treatment. (*See generally* ECF No. 26.) In seeking summary judgment, Officer Sikorski denies any constitutional violations and argues that his actions were, in any event, protected by qualified immunity. (*See generally* ECF No. 21.) Lingering questions of fact preclude summary judgment

on the first three of Konsionowski's alleged violations. As to the final two violations, however, Officer Sikorski is entitled to summary judgment.

## I. Because Material Questions of Fact Remain, Konsionowski Can Proceed with Three of the Alleged Constitutional Violations.

### A. Konsionowski Has Genuinely Disputed Whether Officer Sikorski Had Reasonable Suspicion to Conduct Field Sobriety Tests.

Police officers need reasonable suspicion to conduct field sobriety tests. *See Bernardi v. Klein*, 682 F. Supp. 2d 894, 902-03 (W.D. Wis. 2010) (evaluating whether plaintiff's conduct provided police with reasonable suspicion justifying field sobriety tests); *Town of Freedom v. Fellinger*, 2013 WI App 115, ¶17, 350 Wis. 2d 507, 838 N.W.2d 137 (concluding "to justify the intrusion of a field sobriety test, an officer must have reasonable suspicion that the driver is impaired"). "'Reasonable suspicion is more than an inchoate and unparticularized suspicion or hunch.'" *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003) (quoting *United States v. Ward*, 144 F.3d 1024, 1034 (7th Cir. 1998)). It "must be based on specific, articulable facts which, judged in light of the officers' experience, would justify intrusion." *United States v. Marrocco*, 578 F.3d 627, 633 (7th Cir. 2009). Thus, to have reasonable suspicion, an officer must identify "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). And resolution at summary judgment is inapt when reasonable suspicion "wholly turns on the credibility of the officers." *Smith v. City of Milwaukee*, No. 18-CV-1797, 2020 WL 607050, at *5 (E.D. Wis. Feb. 7, 2020) (citing *Payne v. Milwaukee Cnty.*, 146 F.3d 430, 432 (7th Cir. 1998)).

At the time he requested backup in preparation for the field sobriety tests, Officer Sikorski had interacted with Konsionowski for barely a minute (63 seconds), during which time he claims he noticed glassy eyes and pinpoint pupils, slurred and deliberate speech, difficulty removing a license from a wallet,[2] and an unsteady gait. The combined weight of these four observations, if unchallenged, would undoubtedly create reasonable suspicion of impairment. But the observations

---

[2] The Court notes that even if the video evidence reflected Officer Sikorski's version of this event, Konsionowski's trouble removing his license could not have supported reasonable suspicion, which must be judged ex ante. *See Fellinger*, 2013 WI App 115, ¶17 (concluding "an officer must have reasonable suspicion that the driver is impaired *before* requesting field sobriety tests") (emphasis added); *see also Bernardi*, 682 F. Supp. 2d at 903 (evaluating whether police officer had reasonable suspicion of impairment before requesting field sobriety tests). By the time Konsionowski retrieved his wallet, Officer Sikorski had already requested the field sobriety tests. Subsequent evidence of impairment cannot render an otherwise unreasonable suspicion reasonable.

are not unchallenged, and however steadfastly Officer Sikorski holds to his version of them, contested facts, even in the aggregate, can never amount to reasonable suspicion at summary judgment.

On the matter of his allegedly very glassy eyes and pinpoint pupils, Konsionowski injects uncertainty through his booking photograph, the EMT's Out of Hospital Care Report, and Officers Sikorski's and Helland's contemporaneous written reports. Konsionowski's booking photograph does not depict pinpoint pupils. (ECF No. 35 at ¶76.) The Out of Hospital Care Report indicates that Konsionowski's pupils were "normal." (*Id.* at ¶70.) And neither Officer Sikorski nor Officer Helland referenced glassy eyes in their reports. (*Id.* at ¶¶92, 96.) While he accepts that these facts cast some measure of doubt, Officer Sikorski appears to believe that his word is gospel unless Konsionowski can affirmatively contradict it. (ECF No. 36 at ¶14.) But the movant's burden at summary judgment is not adjusted for occupation. It would be a novel and dangerous standard indeed if courts were required to draw all inferences and construe all disputed facts in *the moving party's* favor simply because that party wears a badge. Maybe a jury will find Officer Sikorski more credible. But he is not entitled to that presumption at summary judgment. The state of Konsionowski's eyes is in genuine dispute. At this stage, Officer Sikorski cannot rely on his side of that dispute to establish reasonable suspicion as a matter of law.

Officer Sikorski similarly argues that, because no one can prove that Konsionowski did *not* have slurred and deliberate speech at the scene of the accident, the Court must accept his averments as fact. (*Id.* at ¶15.) Not so, especially when the record introduces reasons for skepticism. The Out of Hospital Care EMT report indicates that Konsionowski had appropriate speech at the time he was treated by EMT Sukup. (ECF No. 35 at ¶73.) And Sukup testified that, had she noticed slurred speech, she likely would have documented it in the report. (*Id.* at ¶74.) Officer Helland's supplemental report, which he admittedly prepared with the intention of corroborating his fellow officer's claim to reasonable suspicion, does not reference slurred, slow, or deliberate speech at all. (*Id.* at ¶¶91-92.) And after watching the dashcam footage, neither Officer Sikorski nor Officer Helland could identify any instances of slurred speech. (*Id.* at ¶¶93-94.) In short, nothing in the record establishes the existence of slurred or deliberate speech as a matter of fact, so, at summary judgment, it cannot be the foundation on which reasonable suspicion is built.

The only two people who saw or ever will see Konsionowski remove his license from his wallet are the opposing parties in this case. Jensen's car completely obstructs the relevant dashcam

footage. (ECF No. 23-5 at 8:48-8:53.) Considering their conflicting accounts and equally strong motives to fabricate, neither party's version can be accepted as undisputed fact. The truth is a question for the jury. Therefore, the difficulty Konsionowski may or may not have had retrieving his license cannot support a finding of reasonable suspicion at summary judgment.

Officer Sikorski's claim that he observed an unsteady gait stands on even shakier evidentiary ground. Nowhere in his handwritten notes, the supplementary report, the citation, or the Alcohol/Drug Influence Report did Officer Sikorski mention that he observed Konsionowski walking with an unsteady gait. (ECF No. 35 at ¶95.) These omissions are notable because Officer Sikorski testified that he would have documented an unsteady gait if he had noticed it. (*Id.* at ¶98.) More damning is Officer Sikorski's own dashcam video, which captures Konsionowski walking, without trouble, to the passenger side of his truck. (ECF No. 23-5 at 16:53:40-16:53:51.) Officer Sikorski attempted to use this objective evidence to corroborate his claim, testifying at his deposition that he observed an unsteady gait when reviewing the footage. (ECF No. 35 at ¶15.) But the video does not remotely prove the officer's claim; indeed, there does not appear to be anything obviously "unsteady" about Konsionowski's striding. If Officer Sikorski considers this an unsteady gait, Olympic gymnasts should be thankful he is not judging their balance beam routines in Paris in 2024.

Stripped of the benefit of the disputed contentions about Konsionowski's eyes, speech, motor skills, and gait, Officer Sikorski has nothing to support his claim of reasonable suspicion. A factfinder may ultimately conclude that some of those factors existed, but that is irrelevant to today's decision. Because Officer Sikorski has not identified any undisputed facts that would support a determination of reasonable suspicion, he cannot prevail at summary judgment.

**B. Konsionowski Has Genuinely Disputed Whether Officer Sikorski Had Probable Cause to Arrest Him for Operating While Under the Influence.**

"A law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000). The existence of probable cause, thus, does not depend upon the ultimate accuracy of the officer's deduction, but instead the reasonableness of that deduction based on the objective facts available to him. *See Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) ("Officers are entitled to summary judgment on qualified immunity

grounds if their actions were not objectively unreasonable at the time they were taken."). While a police officer need not investigate a suspect's every affirmative defense, *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999), he may not disregard exculpatory information or close "his eyes to facts that would help clarify the circumstances of an arrest." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). Because this analysis relies on consideration of context-specific facts, probable cause should be found as a matter of law "only when the facts permit but one conclusion—that is, 'only when no reasonable jury could find that the officer did not have probable cause' to make an arrest." *Jones ex rel. Jones v. Webb*, 45 F.3d 178, 182 (7th Cir. 1995) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

Shortly after he arrived on the scene, Officer Sikorski asked if anyone was injured, and Konsionowski stated that he was "a little out of it," "dazed," and "a little hurt in my neck." (ECF No. 35 at ¶8.) Officer Sikorski expressed concern, and he and Konsionowski agreed that an ambulance should be called. (ECF No. 27 at ¶11.) Medical personnel arrived before Officer Sikorski administered any of the field sobriety tests, but Konsionowski was not permitted to receive medical attention until after the tests had been completed and he had been placed under arrest. (ECF No. 23-14 at 3:21; ECF No. 35 at ¶66.) Under the circumstances, a reasonable jury could conclude that Officer Sikorski's failure to explore the obvious exculpatory explanation for Konsionowski's alleged impairment—a concussion sustained in the car accident—meant he lacked probable cause to arrest. *See Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) (finding officers' decision to ignore plaintiff's assertions that she was injured negated probable cause allegedly established by poor performance on field sobriety tests); *Carroll v. Village of Homewood*, No. 97C2747, 2001 WL 1467708 (N.D. Ill. Nov. 15, 2001) (holding that, where officers knew plaintiff badly needed to urinate, and that need to urinate may have impacted his performance on field sobriety tests, probable cause to arrest could not be established at summary judgment). As such, Officer Sikorski cannot establish probable cause as a matter of law at summary judgment.

But Officer Sikorski protests that Konsionowski failed the field sobriety tests, and that was sufficient, in and of itself, to establish probable cause. After all, most suspects, guilty or otherwise, will conjure several innocent explanations for their behavior. Requiring police officers to rule out every single one would turn the quest for probable cause into the labors of Hercules. There is, however, "a meaningful distinction between *disregarding* potentially exculpatory information and

*disbelieving* it." *Mahnke v. Garrigan*, 428 F. App'x 630, 635 (7th Cir. 2011). For example, Konsionowski might have told Officer Sikorski that he appeared impaired because he was a Martian suffering under the crushing force of Earth's harsher gravitational forces. In that situation, the Fourth Amendment would not require Officer Sikorski to conclusively disprove the existence of extraterrestrials in order to execute an arrest. It is another matter entirely, though, when a police officer genuinely believes a suspect may have a head injury, has EMTs ready and waiting to evaluate that suspect, and chooses instead to proceed with field sobriety tests and base probable cause to arrest solely on the outcome of those tests without regard to what a medical evaluation might uncover. The latter is an example of an officer disregarding potentially exculpatory information, and it is not too much to ask that the officer postpone his arrest while the suspect receives medical attention, which might ultimately exculpate him.

The Court also rejects the proposition that Konsionowski's performance on the field sobriety tests conclusively established probable cause to arrest. Konsionowski indisputably failed the walk-and-turn and one-leg stand tests. (ECF No. 27 at ¶¶62, 71.) But, as previously stated, Officer Sikorski refused to explore innocent explanations for these failures. And the video evidence suggest that Konsionowski's failures were largely if not entirely technical. (ECF No. 23-14 at 5:11-10:24.) He asked Officer Sikorski which way he was supposed to turn during the walk-and-turn test instead of completing the turn without pausing. (*Id.* at 7:01-04.) He stopped counting at "ten one thousand" during the one-leg stand test. (*Id.* at 10:00.) He slightly raised his arms twice during the walk, and he wavered for a second during the one-leg stand. (ECF No. 27 at ¶61; ECF No. 23-14 at 9:57-59.) In other circumstances, these technical failures might establish probable cause as a matter of law, but not here, where the victim of a car crash was required to perform the tests shortly after the incident without receiving medical treatment. A reasonable jury could decide that Officer Sikorski was essentially calling ticky-tack fouls to achieve his desired result. To be clear, the Court does not rule, as Konsionowski insists, that he passed the field sobriety tests. (ECF No. 1 at 4.) But considering the totality of the circumstances, it also cannot say that the manner in which he failed established probable cause to arrest as a matter of law.

### C. Factual Disputes Over Whether Officer Sikorski Had Probable Cause to Search Konsionowski's Person and Vehicle Preclude Summary Judgment.

Police may search the person of a lawfully arrested individual without a warrant. *See United States v. Robinson*, 414 U.S. 218, 224 (1973). They may also search the passenger compartment of an arrestee's car incident to arrest if they could reasonably believe that evidence

of the arresting offense might be found therein. *See Arizona v. Gant*, 556 U.S. 332, 344 (2009). If such evidence is uncovered, they may search the rest of the vehicle, including the trunk. *See United States v. Cochran*, 309 F. App'x 2, 6-7 (7th Cir. 2009).

Immediately after arresting him, Officer Sikorski thoroughly searched Konsionowski's person, digging through his pockets and removing various objects. (ECF No. 23-14 at 12:58-14:00.) He then searched Konsionowski's vehicle for evidence to support a drug charge. (ECF No. 27 at ¶79.) This search uncovered several bottles of prescription drugs, which Officer Sikorski used to justify expanding the search to the locked portion of the truck bed. (ECF No. 27 at ¶80; ECF No. 35 at ¶67.) The legality of these searches depends upon whether Officer Sikorski had probable cause to make an arrest. *See United States v. Edwards*, 885 F.2d 377, 383 (7th Cir. 1989) ("a search and seizure incident to an arrest must be incident to a lawful arrest"). Because factual disputes prevent the Court from completing a probable cause analysis, the lawfulness of the searches remains open-ended. If the jury finds probable cause to arrest, then the searches did not violate Konsionowski's constitutional rights. *See Gant*, 556 U.S. at 344. But should the jury find probable cause wanting, Officer Sikorski would be in violation of clearly established law. *See Sibron v. New York*, 392 U.S. 40, 62-63 (1968) (finding that absence of probable cause to arrest destroyed justification for police officer's warrantless search). Accordingly, summary judgment must be denied on these claims.

**II.     Konsionowki's Remaining Claims Do Not Survive Summary Judgment.**

    **A.     Konsionowski Consented to the Breathalyzer and Blood Draw, so Summary Judgment Will Be Granted as to those Alleged Violations.**

Blood draws and breathalyzer tests are searches for purposes of the Fourth Amendment. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186 (2016). But while Konsionowski was subjected to these searches, they did not violate his constitutional rights. Konsionowski does not dispute that he consented to both. This ends the inquiry. If the subject of a search voluntarily consents to that search, he or she cannot later complain that the search was unreasonable pursuant to a Fourth Amendment claim. *See id*. Thus, Officer Sikorski is entitled to summary judgment as to these claims.

    **B.     Konsionowski Improperly Raised His Fourteenth Amendment Disparate Treatment Claim for the First Time in His Summary Judgment Response.**

A plaintiff must include in his complaint a short, plain statement of his claims showing that he is entitled to relief. *See* Fed. R. Civ. P. 8; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557

(2007). This is not a suggestion. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief *must* contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]") (emphasis added). The Rules of Civil Procedure provide avenues for amending the complaint, *see* Fed. R. Civ. P. 15, but a party "cannot amend his complaint 'through arguments in his brief to a motion for summary judgment.'" *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)).

In his summary judgment response brief, Konsionowski argues that he is entitled to relief under a new Fourteenth Amendment Equal Protection claim because Officer Sikorski irrationally treated him worse than Jensen, a similarly situated individual. (ECF No. 26 at 20.) Konsionowski's complaint makes no reference to this claim. (*See* ECF No. 1.) This alleged violation appeared for the first time, over a year after the case was filed, in response to Officer Sikorski's motion for summary judgment. Accordingly, it must be dismissed for failure to comply with federal pleading requirements.

### III. Officer Sikorski is Not Entitled to Qualified Immunity.

Officer Sikorski contends that even if there are factual disputes that preclude summary judgment on the merits, he is nevertheless entitled to dismissal of Konsionowski's claims based on qualified immunity. But the number and dispositive nature of the disputed facts in this case make qualified immunity inappropriate.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials are not entitled to qualified immunity if: (1) "the facts that a plaintiff has alleged make out a violation of a constitutional right"; and (2) "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). If one view of the disputed facts could lead a jury to conclude that an officer violated a clearly established constitutional right, police officers may not seek qualified immunity based on an alternative, more advantageous reading of those facts. *See Nettles-Bey v. Williams*, 819 F.3d 959, 961 (7th Cir. 2016) (holding that where the admissible evidence would permit two inferences, one of which would implicate violations of a plaintiff's clearly established constitutional rights, the case must proceed to trial, and the officers are not entitled to qualified immunity).

With respect to the first alleged violation of Konsionowski's rights, that Officer Sikorski lacked reasonable suspicion to conduct field sobriety tests, resolution of this claim is tied to the outcome of a game of "he said, he said." As in *Nettles-Bey*, the fact pattern permits two reasonable inferences—one in support of a finding of reasonable suspicion, one against. The Court cannot grant Officer Sikorski qualified immunity if his actions would violate a clearly established constitutional right under *either*. It has been clearly established since at least *Terry v. Ohio*, 392 U.S. 1 (1968), that officers may not detain private citizens without reasonable suspicion of criminal activity. *See* 392 U.S. at 22 ("Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction."). Therefore, if a jury were to agree with Konsionowski and find illusory the factors Officer Sikorski relied on to articulate reasonable suspicion, his subsequent behavior—conducting the field sobriety tests—would violate a clearly established constitutional right. That being the case, he is not entitled to qualified immunity on this claim.

Factual issues similarly preclude qualified immunity on Konsionowski's claim that Officer Sikorski lacked probably cause for an arrest. Police officers are entitled to qualified immunity in false arrest cases if they can establish arguable probable cause. *See Humphrey*, 148 F.3d at 725. "Arguable probable cause exists when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Id.* (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)). But where material factual disputes bearing on the question of arguable probable cause proliferate, qualified immunity is unavailable. *See Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018), *overruled on other grounds by Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019); *Gutierrez v. Kermon*, 722 F.3d 1003, 1011-12 (7th Cir. 2013); *Carroll*, 2001 WL 1467708, at *7. At this juncture, the question before the Court is whether a reasonable officer standing in Officer Sikorski's shoes could have reasonably believed that he had probable cause to arrest Konsionowski. Due to the preponderance of disputed facts bearing on that question, it is impossible to resolve this issue in the officer's favor. All four factors that Officer Sikorski cites to support reasonable suspicion are in dispute, so none of them can be wielded to bolster the case for probable cause. That leaves only the technical failures on the field sobriety test, and, as previously discussed, a reasonable jury could find that Officer Sikorski improperly conducted the tests without first allowing Konsionowski to seek medical treatment,

mitigating or even eliminating those failures altogether. Because these disputes cannot be resolved at summary judgment, the Court is unable to resolve the question of qualified immunity, and Officer Sikorski cannot invoke that doctrine to prevent trial.

Officer Sikorski's claims to qualified immunity on the searches of Konsionowski's person and truck fail for similar reasons. The constitutionality of these searches turns on the legality of Konsionowski's arrest. *See Edwards*, 885 F.2d at 383. But, as just stated, the legality of the arrest is a question for the jury. This means the jury could draw one of two reasonable inferences: that probable cause supported the arrest, or that it did not. If it finds the latter, then the subsequent searches were not lawfully conducted. Under *Nettles-Bey*, Officer Sikorski is not entitled to qualified immunity where one view of the disputed facts would result in a violation of a clearly established constitutional right. *See* 819 F.3d at 961.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment under Fed. R. Civ. P. 56 (ECF No. 20) is **GRANTED in part** and **DENIED in part**. Summary judgment is granted as to the claims that Officer Sikorski violated the Fourth Amendment by administering a breathalyzer and blood draw to Konsionowski. Summary judgment is also granted as to the claim that Officer Sikorski's treatment of Konsionowski violated the Fourteenth Amendment Equal Protection Clause. Those claims are dismissed. Summary judgment is denied as to the claim that Officer Sikorski violated the Fourth Amendment by detaining Konsionowski without reasonable suspicion. Summary judgment is also denied as to the claims that Officer Sikorski violated the Fourth Amendment by arresting Konsionowski without probable cause and improperly searching his person and vehicle.

Dated at Milwaukee, Wisconsin on March 2, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge